UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| BLACK POLITICAL TASK FORCE; ¿OISTE?: The Massachusetts Statewide Latino Organization, BOSTON VOTE, JAMES E. COFIELD, JR., LLOYD KING, BRENDA LOPES, CARMEN POLA, JAIME RODRIGUEZ, CAROLYN RAY, LUIS FERNANDO MILAN, DOROTHEA JONES, HORACE SMALL, NANCY COOK, WILLIE M. HURD, ENID BAILEY, FLORA J. HOWARD, and ROSCOE MORRIS, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS M. FINNERAN, in his official capacity as Speaker of the Massachusetts House of Representatives, THOMAS F. BIRMINGHAM, in his official capacity as President of the Massachusetts Senate, JANE SWIFT, in her official capacity as Acting Governor of the Commonwealth of Massachusetts, and WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts, <br><br> Defendants. | Civil Action No. <br><br> 02-11190 WGY <br><br><br> **COMPLAINT AND REQUEST FOR THREE-JUDGE COURT PURSUANT TO 28 U.S.C. § 2284** |

## Preliminary Statement

1. This is a voting rights action alleging that minority voters, particularly African-American and Latino voters, in the City of Boston have had their voting power in elections for the Massachusetts House of Representatives (the "House") unlawfully and unconstitutionally diluted by the Legislature's adoption of Chapter 125 of the Massachusetts Acts of 2001 (the



**DOCKETED**

"Redistricting Act"). Despite substantial growth in Boston's minority population, which now constitutes over 50% of the City's total population, the Redistricting Plan eliminated two majority-minority districts, reduced the minority population in one district, and "super-packed" another district so that it contains a voting age population that is 98% minority. As a result only five of the seventeen House electoral districts are majority-minority districts. The Redistricting Act creates majority-white House districts well in excess of the number justifiable by the white voting age population. The Redistricting Act gerrymanders districts and dilutes minority voting strength in violation of Section 2 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973, and intentionally and arbitrarily violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Fifteenth Amendment to the United States Constitution. Defendants' actions deprive plaintiffs of equal voting power and prevent them from electing candidates of their choice. Plaintiffs seek, among other relief, declaratory and injunctive relief prohibiting the further utilization of the House electoral districts established under the Redistricting Act.

## Jurisdiction and Venue

2. Plaintiffs invoke the jurisdiction of this Court under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 2201. This lawsuit is authorized by 42 U.S.C. §§ 1973j(f) and 1983.

3. This action challenges the constitutionality of the apportionment of a statewide legislative body, the Massachusetts House of Representatives. Under 28 U.S.C. § 2284(a), this action is required to be heard by a three-judge court.

4. Because the defendants reside in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district, venue in this district is proper under 28 U.S.C. § 1391(b).

## Parties

5.  Plaintiff Black Political Task Force (the "Task Force") is a Political Action Committee organized in the Commonwealth of Massachusetts. The Task Force is the largest and oldest African-American political action and voting rights group in the Commonwealth and has been involved in redistricting issues for nearly twenty years. It has often joined with other minority and political groups to influence the redrawing of city, state, and congressional districts to afford all citizens equal opportunity to participate in the political process and an equal opportunity to elect candidates of their choice.

6.  Plaintiff ¿OISTE? is a Massachusetts non-profit corporation organized to promote the social, political, and economic standing of Latinas and Latinos in Massachusetts, with a principal place of business at 37 Temple Street, Boston, Massachusetts. Its members include Latino citizens of the United States who reside in Boston and are otherwise eligible to vote.

7.  Plaintiff Boston VOTE is a non-partisan organization dedicated to increasing voter participation in minority neighborhoods and among other historically underrepresented populations in the City of Boston and to ensuring fair and open elections.

8.  Plaintiff James E. Cofield, Jr. is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 10 Malcolm Road, Jamaica Plain, Massachusetts, which is within the 15th Suffolk District.

9.  Plaintiff Lloyd King is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 11A Forest Street, Roxbury, Massachusetts, which is within the 7th Suffolk District.

10. Plaintiff Brenda Lopes is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 51 Charme Avenue, Roslindale,

Massachusetts, which is within the 14th Suffolk District.

11. Plaintiff Carmen Pola is Latina citizen of the United States who is duly registered to vote in Massachusetts, residing at 63 Hillside Street, Boston, Massachusetts, which is within the 15th Suffolk District.

12. Plaintiff Jaime Rodriguez is a Latino citizen of the United States who is duly registered to vote in Massachusetts, residing at 93 Montebello Road, Jamaica Plain, Massachusetts, which is within the 11th Suffolk District.

13. Plaintiff Carolyn Ray is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 44 Hillside Street, Boston, Massachusetts, which is within the 15th Suffolk District.

14. Plaintiff Luis Fernando Milan is a Latino citizen of the United States who is duly registered to vote in Massachusetts, residing at 21 Gayhead Street, Jamaica Plain, Massachusetts, which is within the 15th Suffolk District.

15. Plaintiff Dorothea Jones is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 73 Monroe Street, Roxbury, Massachusetts, which is within the 7th Suffolk District.

16. Plaintiff Horace Small is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 3 Alveston Street, Jamaica Plain, Massachusetts which is within the 11th Suffolk District.

17. Plaintiff Nancy Cook is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 40 Rosewood Street, Mattapan, Massachusetts, which is within the 12th Suffolk District.

18. Plaintiff Willie M. Hurd is an African-American citizen of the United States who

is duly registered to vote in Massachusetts, residing at 60 Edson Street, Dorchester, Massachusetts, which is within the 6th Suffolk District.

19. Plaintiff Enid Bailey is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 25 Dodge Park, Boston, Massachusetts, which is within the 14th Suffolk District.

20. Plaintiff Flora J. Howard is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 107 Ormond Street #2, Mattapan, Massachusetts, which is within the 6th Suffolk District.

21. Plaintiff Roscoe Morris is an African-American citizen of the United States who is duly registered to vote in Massachusetts, residing at 22 Bodwell Street, Dorchester, Massachusetts, which is within the 5th Suffolk District.

22. Defendant Thomas M. Finneran is, and was at all times relevant to this action, the Speaker and the presiding officer of the House. The House is one of two branches of the state legislature in which the power to redistrict the Massachusetts House and Senate is vested. He is sued in his official capacity.

23. Defendant Thomas F. Birmingham is, and was at all times relevant to this action, the President and the presiding officer of the Senate of the Commonwealth of Massachusetts. The Senate is one of two branches of the state legislature in which the power to redistrict the Massachusetts House and Senate is vested. He is sued in his official capacity.

24. Defendant Jane Swift is the Acting Governor of the Commonwealth of Massachusetts and has authority to approve redistricting legislation. She is sued in her official capacity.

25. Defendant William Francis Galvin is the Secretary of the Commonwealth of Massachusetts and is responsible under its laws for the administration of state elections. He is sued in his official capacity.

### Facts

26. According to the 2000 census conducted by the United States Census Bureau ("Census 2000"), the City of Boston has a total population of 589,141. Between 1990 and 2000, the non-Hispanic white population fell by 13.9%, decreasing to 49.5% of Boston's total population. During the same 1990 to 2000 period, the minority population grew 26.3%, increasing from 41.0% of Boston's total population in 1990 to 50.5% in 2000, while the minority voting age population (at times, "VAP") increased to 44.6% of the Boston VAP. Boston has the largest minority population in the state and, for the first time in its history, has become a majority-minority city.

27. Boston has the largest African-American (140,305) and Latino (85,089) population in the state. African-Americans (86,897) and Latinos (57,258) of voting age comprise the largest minority group in Boston, constituting 32.6% of the Boston VAP.

28. On November 8, 2001, Acting Governor Swift signed into law the Redistricting Act, Chapter 125 of the Acts of 2001, entitled "An Act Relative to Establishing Representative Districts in the General Court." The House of Representatives voted to approve the bill that became the Redistricting Act, House Bill No. 4701, on October 25, 2001. The Senate voted to approve the same bill as Senate Bill No. 2147 on October 30, 2001.

29. Under the Redistricting Act, only 5 of the 17 House electoral districts in Boston (or 29.4%) are majority-minority districts by VAP, despite the fact that minorities constitute 44.6% of the Boston VAP. More specifically, only 4 of the House electoral districts (or 23.5%) are majority African-American and Latino, despite the fact that African-Americans and Latinos

constitute 32.6% of the voting age population in Boston. Conversely, 12 of 17 House districts (or 70.6%) have been constructed as majority white districts, despite the fact that whites constitute only 55.4% of the Boston VAP, and, in fact, the Redistricting Act increased the number of majority white districts from 11 to 12.

30. Despite the overwhelming increase in the minority population in Boston, the Redistricting Act eliminated two majority-minority districts. Those are the 11th and 15th Suffolk Districts comprising parts of Mission Hill, Roxbury, and Jamaica Plain. The 11th Suffolk District was, in fact, majority African-American and Latino prior to the changes imposed by the Redistricting Act.

31. The 11th Suffolk District was changed by the Redistricting Act from a minority VAP of 62.3% to a minority VAP of 49.3%, and more specifically from an African-American and Latino VAP of 55.0% to an African-American and Latino VAP of 42.4%. It is now constituted as a majority white district. Predominantly minority precincts in the Boston area of Dorchester were eliminated from the district and replaced with predominantly white precincts from the Boston area of Roslindale. As set forth below, the predominantly minority precincts removed from the 11th Suffolk District were used to "super-pack" the 6th Suffolk House electoral district with African-American, Latino and other minority voters.

32. The 15th Suffolk District was changed by the Redistricting Act from 54.3% minority VAP to 40.9% minority VAP, and from an African-American and Latino VAP of 43.5% to an African-American and Latino VAP of only 29.6%. The 15th Suffolk District is now constituted as a majority white district. Largely minority precincts in Roxbury were removed from the district and replaced by predominantly white precincts from the Jamaica Plain area of

Boston, as well as by two predominantly white precincts taken from outside of Boston, in the Town of Brookline.

33. Prior to redistricting, the 12th Suffolk District, currently represented by defendant Finneran, had a minority VAP of 74.1%, and an African-American and Latino VAP of 66.1%. The Redistricting Act reduced the minority VAP to 60.6% and the African-American and Latino VAP to only 53.8% by removing predominantly minority precincts in Dorchester and Mattapan and adding three almost entirely white precincts, two of them taken from outside of Boston, in the Town of Milton. As set forth below, the predominantly minority precincts which were removed from the 12th Suffolk District were used to "super-pack" the 6th Suffolk House electoral district with African-American, Latino and other minority voters.

34. The 6th Suffolk District was changed by the Redistricting Act from 82.8% minority VAP to 98.0% minority VAP, and from 76.6% African-American and Latino VAP to 91.8% African-American and Latino VAP. This "super-packing" of the minority VAP into the 6th Suffolk District was accomplished by eliminating precincts with the greater number of white voters and adding six heavily minority precincts, three of which were transferred from the 11th Suffolk District and three from the 12th Suffolk District. In addition, the Redistricting Act retained the 5th Suffolk District as a "super-packed" minority district, with a minority VAP of 91.2%.

35. "Super-packing" minority districts dilutes the minority vote not only by adding minority voters to districts where they will have little or no meaningful impact, because minority voters are already in the substantial majority in such districts, but also by permitting the transfer of white voters from "super-packed" districts to other districts in which those white voters dilute the minority vote.

36. Boston's minority voters, including specifically its African-American and Latino voters, are sufficiently numerous and geographically compact to create additional districts in Boston with a significant majority of minority individuals of voting age.

37. African-American, Latino and other minority voters in Boston vote cohesively to support minority candidates. The white population of Boston votes cohesively as a bloc to support white candidates and defeat the electoral preferences of Boston's minority voters.

38. For example, Boston voters living in precincts with a substantial African-American, Latino and other minority VAP were substantially more likely than voters living in precincts with a substantial white VAP to vote for the minority candidate in the Boston city council at-large elections in 1991, 1995, 1997 and 2001, while voters in predominantly white precincts cast their ballots predominantly for white candidates.

39. In addition, African-Americans, Latinos and other members of Boston's minority population share neighborhoods, cultural concerns and areas of commerce. The large majority of such minority population lives in the similar and contiguous neighborhoods of Roxbury, Mattapan, Dorchester and adjacent neighborhoods such as Jamaica Plain, Mission Hill, the South End and parts of Hyde Park.

40. Based on the totality of the circumstances, including the combination of the dilution of minority votes in several districts and the "super-packing" of two districts with minority voters, the Redistricting Act has diluted the voting strength of the named individual plaintiffs and other minority voters, has denied said plaintiffs and other minority voters an equal opportunity to participate in the political process and to elect candidates of their preference, and has abridged the right of said plaintiffs and other minority voters to vote on account of their race, color and ethnicity.

41. Upon information and belief, the Redistricting Act created House districts that are more likely to be "safe" for white incumbents and other white candidates by taking race into account when creating districts.

42. Upon information and belief, race was the predominant factor used in creating House districts under the Redistricting Act.

43. Upon information and belief, the Redistricting Act was enacted for the discriminatory purpose of diluting the voting strength of minority voters.

44. Unless the Redistricting Act is declared to be unlawful, and defendant Galvin is enjoined from conducting future elections in accordance with the Redistricting Act, plaintiffs and other minority voters will suffer irreparable harm.

## Claims

### Count I
### Violation of the Voting Rights Act, 42 U.S.C. § 1973

45. Plaintiffs hereby reallege and incorporate herein by reference the preceding paragraphs of the Complaint as if fully set forth herein.

46. The Redistricting Act dilutes the voting strength of African-American, Latino and other minority residents of Boston and denies them an equal opportunity to participate in the political process and elect candidates of their choice. As such, the Redistricting Act results in a denial or abridgement of the plaintiffs' right to vote on account of their race, color, or ethnicity, in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

### Count II
### Violation of the Equal Protection Clause of the Fourteenth Amendment

47. Plaintiffs hereby reallege and incorporate herein by reference the preceding paragraphs of the Complaint as if fully set forth herein.

48. The Redistricting Act with discriminatory intent took race into account in drawing House district seats and diluted the weight of African-American, Latino and other minority votes in violation of the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution, resulting in a deprivation of the rights of plaintiffs and other minority voters to participate in the electoral process on an equal basis with white voters.

### Count III
### Violation of the Fifteenth Amendment

49. Plaintiffs hereby reallege and incorporate herein by reference all preceding paragraphs of the Complaint as if fully set forth herein.

50. The Redistricting Act unlawfully deprives and abridges the individual plaintiffs' and other African-American, Latino and minority voters' right to vote as guaranteed under the Fifteenth Amendment of the U. S. Constitution.

### Relief

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

1. Declaring Chapter 125 of the Massachusetts Acts of 2001, An Act Relative to Establishing Representative Districts in the General Court, to be in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and of the Fourteenth and Fifteenth Amendments of the U. S. Constitution;

2. Ordering preliminary and permanent injunctive relief enjoining defendant Galvin and his agents from conducting future elections of members of the Massachusetts House of Representatives utilizing the districts established under the Redistricting Act, and ordering the establishment of House electoral districts which comply with the Voting Rights Act and the Fourteenth and Fifteenth Amendments;

3. Retaining jurisdiction of this action until such time as redistricting which complies with the Voting Rights Act and the Fourteenth and Fifteenth Amendments has been completed;

4. Awarding plaintiffs reasonable attorneys' fees, costs, and other expenses of bringing and prosecuting this action, in accordance with 42 U.S.C. §§ 1973*l*(e) and 1988; and

5. Granting plaintiffs such other and further relief as the Court deems just and proper.

### Request for Three-Judge Court

Pursuant to 28 U.S.C. § 2284(a), plaintiffs request a three-judge court.

By their attorneys,

*Nadine Cohen*
Nadine Cohen (BBO # 090040)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW OF THE BOSTON BAR
ASSOCIATION
294 Washington Street, Suite 443
Boston, MA 02108
(617) 988-0609

*Burton A. Nadler*
Burton A. Nadler (BBO # 366340)
PETRUCELLY & NADLER, P.C.
One State Street, Suite 900
Boston, MA 02109
(617) 720-1717

*Richard W. Benka*
Richard W. Benka (BBO # 037320)
Barbara A. Fiacco (BBO # 633618)
Anne Sterman (BBO # 650426)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

Dated: June 13, 2002